UNTED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STANLEY STITH

    **Plaintiff,**   Civil Action No.: 1:25-cv-00039-MJM

v.

JEWISH COMMUNITY SERVICES.

    **Defendant.**

---

## AMENDED COMPLAINT

Plaintiff Stanley Stith and for his amended complaint against Jewish Community Services ("JCS") and respectively avers as follows:

### PARTIES

1. Plaintiff Stanley Stith is a person and is a resident of the state of Pennsylvania.

2. Defendant Jewish Community Services is an organization principally based in state of Maryland.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 and 1332.

4. Venue is proper under 28 U.S.C. § 1391(b) because Defendants conduct business and can be found in this judicial district.

5. The events giving rise to the claims in this action occurred in this judicial district.

6. Plaintiff has exhausted all administrative remedies with the Equal Employment Opportunity Commission and is in possession of a Notice of Right to Sue.

### FACTUAL BACKGROUND

1

7. Plaintiff Stanley Stith began working as an Employment Specialist for Jewish Community Services ("JCS") on May 9, 2022. Stith was paid in $24.99 per hour or a salary of about $45,000.00 per year.

8. Stith was supervised by Tinu Ogunkoya. Ogunkoya managed the Housing and Employment divisions of the JCS.

9. Stich was an Employment Specialist tasked with case management for approximately 20 JCS clients. Many of Stith's clients are considered disabled.

10. On July 12, 2024, Stith went to Sheppard Pratt to see a JCS client who worked as a kitchen aid for the Sheppard Pratt. Stith regularly followed up with his clients to check-in on their needs.

11. At some point a brand-new kitchen floor had been installed at Sheppard Pratt prior to Stith's visit. While Stith met with his client during a one-on-one sit down meeting, Stith fell and injured his neck and backside, while attempting to take a seat. Other people around the vicinity witnessed the injury.

12. On July 17, 2024, Stith informed his supervisor Ogunkoya that he injured himself while visiting a JCS client. Stith told Ogunkoya that he suffered from a slip and fall workplace injury while performing his job at JCS.

13. On July 18, 2024, Stith received an email from Human Resources Darleen Wolfe. Human Resources told Stith that Human Resources was informed by Ogunkoya that Stith had been injured on-site while visiting a JCS client.

14. Human Resources informed Stith that it would open a worker's compensation case and provided Stith with a claim number. Ogunkoya was advised by Stith and Human Resources that Stith would be filing for Workers Compensation.

15. Subsequently, a worker's compensation claim for Stith was opened and filed by JCS Human Resources.

16. On July 19, 2024, Stith went to Express Care for his injuries. Stith was diagnosed with pain in his cervical and neck area. Smith provided a doctor's note to Human Resources Wolfe. The note said that Stith could return to work on Monday, July 22, 2024.

17. On July 23, 2024, Express Care informed Stith that he had been diagnosed with a fracture on his cervical bone.

18. Stith's diagnosis or disability substantially limits Stith's ability to walk, stand and sit.

19. Stith informed his supervisor Ogunkoya that he was diagnosed with a fracture on his cervical bone and would need to take off from work to start physical therapy treatments for his fractured cervical bone.

20. Stith started physical therapy on or about July 24, 2024 and July 25, 2024. Stith took off from work to attend physical therapy and Stith informed his supervisor Ogunkoya each time he took off from work.

21. On July 31, 2024, Stith was terminated from JCS. Ogunkoya informed Stith about his termination.

## CAUSES OF ACTION

### COUNT I: Disability Discrimination
### Americans with Disabilities Act

22. Stith incorporates every preceding paragraph as alleged above.

23. Stith was subject to termination because of his disability.

24. Stith's disability substantially limits his ability to walk, stand, and sit.

25. Stith had a disability within the meaning of the ADA, was a qualified individual, and Defendant discharged Stith because of his disability.

26. Stith was a qualified individual with a disability. Stith was discharged, and at the time of discharge, was performing his job at the level that met Defendant's legitimate expectations.

27. WHEREFORE, prays for nominal damages; compensatory damages, in an amount to be determined at trial; punitive damages, in an amount to be determined at trial; attorney's fees and the costs of this litigation; back pay, front pay, and future benefits, as may be appropriate; pre- and post-judgment interest; and any other relief the Court deems necessary and appropriate.

### COUNT II: Wrongful Discharge

28. Plaintiff incorporates all paragraphs herein *seriatim.*

29. Defendant, by and through, its agents or supervisors, terminated Plaintiff because he filed for workman's compensation.

30. Termination of an employee for filing a workers' compensation claim violates public policy and forms the basis of a wrongful discharge claim.

31. WHEREFORE, for the claim of violation of public policy under Maryland law, Plaintiff pray for judgment against Defendant for all damages allowable by law, including injunctive relief, statutory damages, unlimited compensatory damages, treble damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

### JURY DEMAND

**PLAINTIFF DEMANDS TRIAL BY JURY**

Dated: February 18, 2025

By: */s/Ikechukwu Emejuru*
Ikechukwu Emejuru
**Emejuru Law L.L.C.**
8403 Colesville Road
Suite 1100
Silver Spring, MD 20910
Telephone: (240) 638-2786
Facsimile: (240)-559-2984
iemejuru@emejurulaw.com

5